IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01953-REB-MJW

STACEY W. BRACKENS,

Plaintiff,

v.

DOMINO'S PIZZA LLC and
SEDWICK CLAIMS MANAGEMENT SERVICES, INC.,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)
(Docket No. 12)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This matter is before the undersigned pursuant to an Order of Reference to

United States Magistrate Judge issued by District Judge Robert E. Blackburn on

October 9, 2007 (Docket No. 9).

Now before the court for a report and recommendation is the Defendants' Motion

to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)

(Docket No. 12). The court has considered the motion, the response thereto (Docket

No. 15), and the reply (Docket No. 22), as well as applicable Federal Rules of Civil

Procedure and case law and the court's file. The court now being fully informed makes

the following findings, conclusions, and recommendation.

The operative pleading in this case is the pro se plaintiff's Title VII Complaint filed on September 25, 2007 (Docket No. 5), in which plaintiff alleges the following. Defendants discriminated against him due to his race (he is a black male - see Docket No. 5 at 3, ¶ 3) and disability. Plaintiff started to work at Domino's Pizza as a delivery driver in September 2006, which was his first job since his kidneys failed three years before. After one week on the job, a soda bottle fell on his foot. At first, plaintiff said nothing even though he was in great pain. A few days later during orientation, he was told by the District Manager that all accidents must be reported to the store manager, so the next day, plaintiff told the store assistant manager that plaintiff had had an accident. Though plaintiff was still in great pain, because he was a new employee and did not want to lose his job, he told the assistant manager that "he was in pain but it would be alright." (Docket No. 5 at 5).

Not less than two weeks later, while he was delivering a pizza to a customer in a hotel, plaintiff noticed after getting off the elevator that there was fluid running down his leg. With the pizza in his right hand, plaintiff reached into his pants with his left hand and retrieved his "Peritoneal Cathedral [sic]." (Docket No. 5 at 5). He noticed it had broken, which had never happened before in the 3.5 years he had been on dialysis. Plaintiff was in total shock. Now that it was contaminated, he had to stop the draining that was occurring, so he reconnected the titanium together and went on to deliver the pizza. After the pizza run, plaintiff went straight to his manager (who was the same assistant manager mentioned above) and reported this incident, and plaintiff called the

nurse who was on duty who made a decision along with the on-call doctor to check for infection the next day. The following day, plaintiff was hospitalized and was released after 24 hours. Plaintiff was given a doctor's order that plaintiff was not to work for two weeks due to peritonitis.

When plaintiff returned to work, defendants sought to terminate him and did so due to plaintiff's disability and race. They never allowed him to fill out an accident report, nor did they ever seek plaintiff's medical records before denying his claim. From the time of the accident, everyone within Domino's was "extremely rood [sic] to Plaintiff and no one show any compassion at all." (Docket No. 5 at 6).

The assistant manager, who is white, terminated plaintiff in the presence of a number of employees after a customer wanted plaintiff to return $1.40 she had clearly given as a tip when, after plaintiff left, she discovered that her pizza was cold. Instead of just giving the customer another pizza, the assistant manager ordered plaintiff to take the $1.40 back to the customer. "Plaintiff did not think that going back to a costumer [sic] to return a $1.40 was a wise nor a just thing to order him to do since he was very up set [sic] at the handling of the whole matter. After only being back for just seven days the assist manger [sic] openly and publicly fired the Plaintiff and the Plaintiff felt [sic] and went home." (Docket No. 5 at 6-7).

While plaintiff was on his two-week sick leave, he talked to defendant Sedgwick Claims Management, "who denied both of his claims and made it very clear to Plaintiff that there was a conspiracy in play against him." (Docket No. 5 at 7).

Plaintiff did not complete the form complaint properly because he did not specify

his individual claims under the appropriate headings or number all of his paragraphs as instructed. It appears, however, that he is raising three claims for relief. Plaintiff states that he brings this action against defendant Domino's Pizza pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (claims one and two). Next, with regard to defendant Sedgwick Claims Management, plaintiff claims he brings an action "for Gross Negligent [sic]." (Claim two) (Docket No. 5 at 7). Plaintiff contends the court has jurisdiction over this latter claim based on diversity of citizenship. He avers that he is a resident of Colorado, and defendant is located in Texas. Plaintiff seeks declaratory and injunctive relief and compensatory damages of $360,000 plus costs.

Defendants now move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that plaintiff failed to comply with the statute of limitation set forth in Title VII and the ADA. For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S.

519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to

state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's

failure to cite proper authority, his confusion of various legal theories, his poor syntax

and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the

same time, . . . it is [not] the proper function of the district court to assume the role of

advocate for the pro se litigant."  Id.

Defendants assert that this lawsuit is barred because plaintiff did not initiate

either his Title VII or ADA action within 90 days of his presumed receipt of the dismissal

and notice of rights letter from the Equal Employment Opportunity Commission

("EEOC").  Defendants state that on December 7, 2006,  plaintiff filed his Charge of

Discrimination with the EEOC alleging he was terminated from his employment with

Domino's on November 1, 2006, as a result of discrimination on the basis of his race

and disability.  On January 26, 2007, the EEOC mailed a Dismissal and Notice of

Rights to plaintiff.  (Defs.' Ex. A).  Plaintiff then commenced this action by filing two

separate complaints which were stamped received by the court on September 10,

2007, and eventually filed on September 17, 2007.  (Docket Nos. 3 and 4).  Following

the issuance of an Order Directing Clerk to Commence Civil Action and Directing

Plaintiff to Cure Deficiency,[1] filed on September 17, 2007 (Docket No. 2), a third

---

[1]In that Order, the complaint was noted to have the following deficiencies that
were directed to be cured if plaintiff wished to pursue his claims: was not on proper
form (must use the court's current form), was incomplete (pages 3-6 were missing), the
names in the caption did not match names in the text, and two different complaints were
submitted.  (Docket No. 2 at 2).

complaint (which is the operative pleading) was filed on September 27, 2007. (Docket No. 5).

Defendants assert this lawsuit is barred because plaintiff did not initiate either his Title VII action or his ADA action within 90 days of receipt of the EEOC's Dismissal and Notice of Rights, which was mailed on January 26, 2007. Defendants assert it is well settled within the Tenth Circuit that items mailed by a governmental agency are presumed to be received within three to five days. Thus, defendants assert, even assuming the full five-day presumption, plaintiff is deemed to have received the Dismissal and Notice of Rights on or about January 31, 2007. Even allowing the plaintiff the earliest filing date of September 10, 2007 (when the court first received the plaintiff's first two complaints), defendants assert that plaintiff's Title VII and ADA claims are untimely because they were not filed until 222 days after the date when he is deemed to have received the Dismissal and Notice of Rights. Therefore, defendants seek dismissal of the Complaint in its entirety as time-barred.

In response, plaintiff states that on April 6, 2007, he first made contact with the defendants with a proposal for mediation and gave defendants 20 days to respond, or he would seek legal action. Plaintiff waited an additional four months to file this action. Plaintiff notes that he is pro se in this matter and is also suffering from a:

> life treating Disability, Kidney failure, 2007 has not been the best year for plaintiff with regard to his Disability. because of the many ongoing problems that Plaintiff has had to undergo in 2007, he has not been able to met [sic] the time limits set forth by the law concerning the case. The Plaintiff ask that the court consider the mediating [sic] circumstances that surround this case, that being, Plaintiff's unsettling health. Plaintiff ask that the court consider his Disability and that the court would make

> reasonable concession for it.  If the court can not make reasonable
> concession for it and accommodate plaintiff,s [sic] Disability, who can.

(Docket No. 15 at 2).  Plaintiff claims he had to wait until his health was settled enough

to proceed in this matter so he could be actively involved from start to finish.  He claims

that in 2007 he was hospitalized and had to fight an infection and had worry and stress

that he had to endure.  He assets that if he did not have the health issues in 2007, he

"would have surely filed this case in a more timely matter [sic], but I note, that I did take

some action within the 90 days, when I sent letters to both of the Defendants named in

this complaint, seeking to Mediate." (Docket No. 15 at 3).  Plaintiff asks the court to

deny defendants' motion to dismiss and allow his "case to receive the justice that it

deserves and be allow [sic] to move forward." (Docket No. 15 at 3).

Under both Title VII and the ADA, a plaintiff must file a federal lawsuit within 90

days after receiving notice of the right to sue from the EEOC.  42 U.S.C. §§ 2000e-

5(f)(1), 12117(a).  See Calvert v. Roadway Exp., Inc., 32 Fed. Appx. 510, 512 (10th Cir.

2002).  This 90-day deadline is a condition precedent to suit, rather than a jurisdictional

prerequisite, which operates like a statute of limitations and is subject to estoppel,

waiver, and equitable tolling.  Jarrett v. U.S. Sprint Comm. Co., 22 F.3d 256, 259-60

(10th Cir. 1994).  Here, plaintiff states in his Complaint that he received the EEOC's

Notice of Right to Sue the Defendants on December 13, 2006.  (Docket No. 5 at 4).

Plaintiff, however, did not attach a copy of the EEOC decision as instructed on the form

Complaint.  Nevertheless, defendants have attached a copy of that decision to their

motion to dismiss.  (Defs.' Ex. A).  Significantly, that decision is dated January 26,

2007, and as correctly calculated by defendants, giving plaintiff the benefit of a

presumptive five-day delivery period (i.e., presuming receipt on January 31, 2007), <u>see</u>

<u>Witt v. Roadway Exp.</u>, 136 F.3d 1424, 1429-30 (10th Cir. 1998) (rebuttable presumption

of receipt within five days on evidence that a properly addressed piece of mail is placed

in the care of the postal service), plaintiff had up to and including May 1, 2007, to

commence this action, absent estoppel, waiver, and equitable tolling.  Plaintiff's original

complaints, however, were not received by the court until September 1, 2007, which

was <u>four months</u> after this 90-day deadline.

Plaintiff appears to be asserting that his complaint should be deemed timely

based upon equitable tolling as a result of his poor health and his pro se status.  The

circumstances in which such tolling will be permitted, however, has been narrowly

limited.  <u>Sullivan v. Harvey</u>, 2007 WL 2828895 (10th Cir. Sept. 28, 2007).  As

defendants correctly assert, in this Circuit, equitable tolling of Title VII and ADA time

limits has been permitted only if the claimant was been "actively deceived" regarding

the procedural prerequisites of bringing the action, and plaintiff here has made no

allegations that defendants actively deceived him.  <u>Witt</u>, 136 F.3d at 1430 (citing <u>Jarrett</u>

<u>v. U.S. Sprint Comm. Co.</u>, 22 F.3d at 260-61).  In addition, the Tenth Circuit has not

tolled the limitations period on the basis of medical circumstances, and in a case in

which the question was presented, the court found that the plaintiff, who claimed mental

illness, did not allege the "exceptional circumstances" required by most courts to toll

the statute.  <u>Biester v. Midwest Health Servs., Inc.</u>, 77 F.3d 1264, 1268 (1996).  In

<u>Biester</u>, the court noted that there was no claim that the plaintiff was adjudged

incompetent or institutionalized and that the evidence demonstrated that in spite of his mental condition, the plaintiff was capable of pursuing his own claim. Id. See Castaldo v. Denver Pub.c Schs., 2007 WL 2472064, *2 (D. Colo. Aug. 28, 2007) ("[T]he Tenth Circuit has specifically suggested that exceptional 'medical' circumstances justify equitable tolling only if the plaintiff was adjudged incompetent or institutionalized.")

Plaintiff here has shown no exceptional circumstances which would warrant equitable tolling. Plaintiff has not alleged that he was either incompetent or institutionalized. Furthermore, as correctly asserted by defendants in their Reply, plaintiff has not made any showing that his medical condition affected his ability to file this action during the pivotal 90-day period after his receipt of the EEOC's Dismissal and Notice of Rights, namely, January 31, 2007, to May 1, 2007. The evidence plaintiff attached to his Response does not show that he was not hospitalized or otherwise incompetent during the relevant 90-day period after January 31, 2007. In fact, defendants correctly note that there is no evidence concerning his medical condition from January 31, 2007, to March 31, 2007, which is the first 59 days of the 90-day period. Thereafter, with respect to the rest of the relevant period, the records provided by plaintiff show only that he was a "no-call-no-show" for a number of appointments between April 10 and 12 and that on May 1, 2007, his "dialysis has been going well," and his condition was rated "perfect." The bulk of the evidence submitted by plaintiff with respect to his medical condition concerns the time period after the 90 days he had to commence this action. Furthermore, during the relevant period, plaintiff was capable of writing a letter (dated April 6) to defendants, proposing mediation. Defendants also

point out that in addition to that April 6 letter, a review of the civil dockets in the United States District Court for the District of Kansas reveals that plaintiff's medical condition did not preclude him from pursuing his claims in that court between January 31, 2007, and May 1, 2007, in the three other lawsuits he was litigating as a pro se plaintiff. (See Defs.' Ex. A).

Finally, the plaintiff's *pro se* status does not entitle him to application of different rules. See Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002) (Plaintiff's "difficulties are those faced by many plaintiffs who nonetheless manage to file suit in a timely manner. To the contrary, the instant case is precisely the type of 'garden variety claim of excusable neglect' that the Supreme Court deemed unworthy of meriting equitable tolling in Irwin [v. Department of Veterans Affairs, 498 U.S. 89 (1990)]."); Castaldo v. Denver Pub. Schs., 2007 WL 2472064, *2 (D. Colo. Aug. 28, 2007).

In sum, this court finds that plaintiff has made no showing that equitable tolling is warranted in this case. Therefore, it is recommended that the plaintiff's Title VII and ADA claims be dismissed as time-barred.

The court notes that the plaintiff also asserts a negligence claim against one of the defendants, Sedgwick Claims Management Services, Inc. More specifically, in his Complaint (Docket No. 5), plaintiff claims he brings an action "for Gross Negligent,when they denied the Plaintiff his right to due process which is lined out within the Dominos Pizza policy. Before his claims was denied they should have looked over Plaintiff [sic] complet [sic] medical record, as well as given Plaintiff his right to fill out and file his hand written statement which he tried to do but was denied by the Manger [sic] at the

time after his injury on the job." (Docket No. 5 at 7). Defendants have not addressed this claim in their motion to dismiss.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 12) be granted to the extent that plaintiff's Title VII and ADA claims be dismissed with prejudice as time-barred.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date: December 10, 2007                    s/ Michael J. Watanabe
     Denver, Colorado                    Michael J. Watanabe
                                            United States Magistrate Judge